Christopher W. Arledge (Bar No. 200767)
Email: carledge@onellp.com
Nathaniel L. Dilger (Bar No. 196203)
Email: ndilger@onellp.com
Jenny S. Kim (Bar No. 282562)
Email: jkim@onellp.com
**ONE LLP**
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, CA 92660
Telephone:  (949) 502-2870
Facsimile:   (949) 258-5081

Stephen G. Larson (Bar No. 145225)
Email: slarson@larsonobrienlaw.com
Dana M. Howard (Bar No. 280798)
Email: dhoward@larsonobrienlaw.com
**LARSON O'BRIEN LLP**
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Plaintiffs,
FIVE STAR GOURMET FOODS, INC. and
DIRECT PACK, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FIVE STAR GOURMET FOODS, INC., a California corporation, and DIRECT PACK, INC., a Delaware corporation,<br><br>          Plaintiffs<br>     v.<br><br>FRESH EXPRESS, INC., a Delaware corporation; PROSEAL AMERICA, INC., a Virginia corporation; JOHN OLIVO, an individual; KENNETH DIVELY, an individual; FABIAN | Case No.<br><br>**COMPLAINT FOR:**<br>(1) **FRAUD AND DECEIT;**<br>(2) **MISAPPROPRIATION OF TRADE SECRETS;**<br>(3) **DESIGN PATENT INFRINGEMENT;**<br>(4) **ACTIVE INDUCEMENT OF PATENT INFRINGEMENT;**<br>(5) **TRADE DRESS INFRINGEMENT;**<br>(6) **ACTIVE INDUCEMENT OF TRADE DRESS INFRINGEMENT;**<br>(7) **COMMON LAW UNFAIR COMPETITION;** |

**COMPLAINT**

| | |
|---|---|
| PEREIRA, an individual; and DOES 1 through 10, inclusive,<br><br>　　　　　　Defendants. | **(8) STATUTORY UNFAIR COMPETITION;**<br>**(9) BREACH OF CONTRACT; AND**<br>**(10) INTENTIONAL INTERFERENCE WITH CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Five Star Gourmet Foods, Inc. ("Five Star") and Direct Pack, Inc. ("Direct Pack") (collectively "Plaintiffs"), for their Complaint against Defendants Fresh Express, Inc. ("Fresh Express"), ProSeal America, Inc. ("ProSeal"), and DOES 1 through 10 (collectively, "Defendants"), allege as follows:

## THE PARTIES

1. Plaintiff Five Star is a corporation organized under the laws of the state of California, with its principal place of business at 3880 E. Ebony Street, Ontario, California 91761.

2. Plaintiff Direct Pack is a corporation organized under the laws of the state of Delaware, with its principal place of business at 1025 W. 8th Street, Azusa, California 91702.

3. On information and belief, Fresh Express is a Delaware corporation with a headquarters in Florida and a "principal office" in Salinas, California.

4. On information and belief, Proseal is a Virginia corporation headquartered in Virginia.

5. On information and belief, Defendant John Olivo is the president of Fresh Express and resides in Florida.

6. On information and belief, Defendant Kenneth Diveley is or was during all relevant times herein, the Chief Executive Officer of Fresh Express and resides in Florida.

7. On information and belief, Fabian Pereira is the Vice President, Marketing for Fresh Express and resides in Illinois.

8. On information and belief, Defendants DOES 1 through 10 participated in or ratified the conduct alleged herein. These DOES are unknown at the present time but likely include parent or affiliate companies of Fresh Express as well as individual executives or owners of such companies and third-party vendors.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

11. On information and belief, this Court has personal jurisdiction over Defendant Fresh Express, since Fresh Express resides and does business in this District.

12. On information and belief, this Court has personal jurisdiction over Defendant Proseal because Proseal does business in this District. Proseal also contractually agreed to jurisdiction in venue in the State of California.

13. On information and belief, this Court has personal jurisdiction over the individual defendants because all of them have done business in this District including breaching contractual obligations in this District.

14. On information and belief, this Court has personal jurisdiction over the DOE defendants, all of whom do business in this District.

## GENERAL ALLEGATIONS

15. In 2016, Fabian Pereira, the Head of Marketing for Fresh Express, met Five Star's CEO, Tal Shoshan, at a Produce Marketing Association trade show. Some months later, Pereira sent an email to Shoshan, saying his company was interested in exploring potential business options. In follow up communications, Pereira made clear that Fresh Express was interested in exploring how the two companies could "develop a fruitful partnership together."

16. The possibility of a partnership with Fresh Express was appealing to Five Star, largely because Fresh Express is a subsidiary of Chiquita Brands, LLC, a global produce company with vast contacts, resources, distribution networks, and production capabilities. At the same time, Shoshan believed Fresh Express could benefit from a relationship with Five Star. Fresh Express had sold prepackaged

salad bowls in certain retail outlets, but never produced their own USDA inspected, prepackaged, value-added salad bowls, and Fresh Express had never particularly succeeded in the space or held any sizable market share in the salad bowl segment. So, when Pereira proposed that he, Olivo, and Diveley meet with Tal privately and tour Five Star's production facilities as part of these partnership discussions, Five Star agreed.

17.  The Fresh Express visitors visited and toured Five Star's Florida facility in May of 2017.  All of the visitors signed non-disclosure agreements before entering the facility, as is required of all visitors to Five Star.  Prior to the tour, Pereira, Olivo and Diveley met with Tal Shoshan and asked poignant questions about Five Star's marketing strategy, product composition, packaging and manufacturing logistics.  After this meeting, they requested and Five Star provided them an extensive tour of its manufacturing facility.  Five Star showed them its production process, how it staffs its production lines, the equipment and equipment vendors it uses, and provided a comprehensive view of FiveStar's entire salad bowl production process.  For example, only Five Star knows how to set up its assembly lines and what order of operations will most efficiently make its product.  Only Five Star knows the complicated order of machinery and live personnel that provides its time-tested method for efficiently producing its salads.  None of this information is public; all of it is proprietary.

18.  Information about Five Star's production processes, staffing, and equipment are valuable, in significant part, because they are secret.  Five Star's food quality, recipes, and distinctive packaging have revolutionized the ready-made salad industry.  A company that wishes to get into the ready-made salad industry could save money, ramp up much more quickly, and compete with Five Star far more effectively with such information.

19.  This is precisely what Fresh Express did. Very shortly after Fresh Express toured Five Star's facility, Henrique Cutrale, of the Cutrale family that

owns Fresh Express and parent company Chiquita, met with Tal Shoshan and made it clear that Fresh Express was not interested in any strategic partnership with Five Star.  He said that Chiquita/Fresh Express was strictly a family-owned business and would never, under any circumstances, partner with others.  Instead, he said that his company was only willing to discuss an outright purchase of Five Star's prepackaged salad business.

20. Shoshan was not interested in selling any part of Five Star, and explained this to Cutrale.  Even so, Cutrale followed up a month later, at the United Fresh Trade Show, invited Tal to dinner, and strongly encouraged him to reconsider. On June 27, 2018, at another trade show in Chicago, Cutrale told Shoshan that if he didn't want to sell the company, he didn't have to worry about it.  Cutrale said that his father had given him $80 million to purchase brand-new equipment and that he would simply take Shoshan's business away from him.

21. This is what Fresh Express has attempted to do.  Fresh Express has used Five Star's secret business information and publicly available information to copy every aspect of Five Star's patented salad bowl products, from the added extra toppings which FiveStar was known for, to the type of ingredients, to the packaging and labeling design which made Simply Fresh a very successful product line.  Fresh Express virtually duplicated the look of Five Star's product line, instead of using their previous (and failing) look and feel, in order to misappropriate Five Star's goodwill and customer base as the leading  premium salad brand.  Fresh Express's goal was to copy the product line and then sell it at a lower cost to quickly benefit from the fruits of Five Stars' many years of blood, sweat and tears.

22. Defendant Proseal has long  been Five Star's packaging machinery supplier.  In fact, Five Star was one of the first if not the first of Proseal's salad processor clients, and Five Star, worked with Proseal to substantially improve the packaging and create the gold standard that Proseal now uses to attract clients. Proseal is subject to a non-disclosure agreement as part of its relationship with Five

Star, a true and correct copy of which is attached hereto as Exhibit. 1.  As part of its efforts to misappropriate Five Star's products and packaging, Fresh Express convinced Proseal to sell them similar equipment and create a manufacturing tool set that is virtually indistinguishable from the tool set used for Five Star's packaging equipment.  As a result, Fresh Express can make packaging that is virtually indistinguishable from Five Star's, and Fresh Express is able to do so without incurring any of the normal time and costs of developing new packaging and is therefore able to enjoy the fruits of Five Star's labor immediately.  Also as a result, Fresh Express confuses consumers into believing they are purchasing products manufactured by Five Star or a company affiliated with Five Star.

## FIRST CAUSE OF ACTION

### (Fraud and Deceit)

### (Against Defendants Fresh Express and DOES 1-3)

23.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-22 above, as if set forth verbatim herein.

24.     Fabian Pereira of Fresh Express represented to Five Star in writing and verbally than Fresh Express was interested in entering into a strategic partnership with Five Star.  Examples of Pereira's representations are attached hereto as Exhibit 2.  Pereira made this representation in order to induce Five Star to permit Fresh Express to tour its facilities and get non-public information about its production processes, staffing, and equipment.

25.     In reality, Fresh Express was never interested in partnering with Five Star.  As Fresh Express's owner later made clear, Fresh Express does not enter into partnerships with non-relatives.  Fresh Express was interested in possibly acquiring Five Star and, if it could not acquire Five Star, in competing directly with Five Star by using any means necessary.  Pereira's representations to the contrary were false.

26.     Pereira made his false representations about exploring a partnership with Five Star in order to gain access to Five Star's non-public information.  Pereira

knew that if he would have shared his true intentions with Shoshan, Shoshan would not have allowed him and his group the opportunity to access the facility or gain access to Five Star's confidential trade secrets. Five Star relied on Pereira's statement in permitting Fresh Express to tour the facility and access its non-public information.

27. As a result of Pereira's false statements, Five Star has now given its sensitive, non-public information to a direct competitor. That information allowed Fresh Express to enter the marketplace more quickly and produce more efficiently, at higher quality, and at a lower cost.

28. Five Star has therefore been damaged in an amount to be proven at trial. Five Star also seeks punitive damages in an amount necessary to punish Fresh Express and deter Fresh Express and others in the future.

## SECOND CAUSE OF ACTION
### (Misappropriation of Trade Secrets)
### (Against Defendants Fresh Express, Proseal, and DOES 4-6)

29. Plaintiff hereby incorporates by reference each and every allegation in paragraphs 1-28 above as if set forth fully herein.

30. Plaintiff has non-public information about its business – primarily information about its production processes, staffing, equipment, recipes, and vendors – that is valuable, at least in part, because it is not known by others in the ready-made salad industry.

31. As a trailblazer in the industry that is known for its product innovation and distinctive packaging, Five Star's business information would be extremely valuable to any would-be competitors. Thus, Five Star takes reasonable precautions to protect its information, for example, by making information accessible only to employees who need it for their job duties, by requiring all employees to sign written agreements not to disclose Five Star's information, and by requiring all

visitors to its facilities, including its key and potential vendors who would have access to this information, to sign strict non-disclosure agreements.

32. Fresh Express convinced Five Star to provide its non-public, valuable information by misrepresenting its intention to partner with Five Star.

33. As a result of Pereira's false statements, Five Star has now given its sensitive, non-public information to a direct competitor. That information allowed Fresh Express to enter the marketplace more quickly and produce more efficiently and at higher quality than would ordinarily be possible in such a short period of time.

34. In addition, Fresh Express convinced Proseal to closely duplicate the tool set used to manufacture Five Star's distinctive packaging and, with insignificant changes, provide a virtually indistinguishable tool set to Fresh Express. Proseal did so in violation of its non-disclosure agreement with Five Star and in violation of industry professional and ethical practices. As a result, Fresh Express is able to make packaging that is virtually indistinguishable from Five Star's distinctive packaging, and Fresh Express did not have to spend the time and money that it would ordinarily have to spend to create and test such packaging.

35. Five Star has therefore been damaged in an amount to be proven at trial. Five Star also seeks punitive damages in an amount necessary to punish Fresh Express and Proseal and deter them and others from such misconduct in the future.

### THIRD CAUSE OF ACTION
**(Design Patent Infringement)**

**(Against Defendants Fresh Express and DOES 7-10)**

36. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-35 above, as if set forth verbatim herein.

37. Plaintiffs Five Star and Direct Pack are co-owners of U.S. Design Pat. Nos. 698,665 and 698,666, copies of which are attached hereto as Exhibits 3 and 4.

38. Fresh Express has sold and offered for sale to retailers and the general public packaging, to which the patented design, or a colorable imitation thereof, has been applied, and has thereby infringed the '665 and '666 patents. Photographs showing the infringing products are attached hereto as Exhibit 5.

39. Certain of the Doe Defendants have also infringed the '665 and '666 patents by producing the infringing packaging for Fresh Express.

40. Five Star has given Fresh Express notice of the infringement through a demand letter, a copy of which is attached hereto as Exhibit 6, and through this complaint.

41. Five Star and Direct Pack have been, and continue to be, damaged by such infringement of the '665 and '666 patents.

## FOURTH CAUSE OF ACTION

**(Active inducement of infringement)**

**(Against Defendant Proseal and DOES 7-10)**

42. Plaintiff Five Star realleges and incorporates by reference the allegations set forth in paragraphs 1-41 above, as if set forth verbatim herein.

43. Defendant Proseal has manufactured and sold to Fresh Express certain machinery, including a manufacturing tool set, that is based on the tool set that Proseal created for Five Star and which is intentionally designed to allow Fresh Express to re-create almost exactly Five Star's patented design as set forth in the '665 and '666 patents.

44. Proseal provided the machinery and tool sets with the express intention of aiding Fresh Express in its patent infringement. Fresh Express has used Proseal's machinery and tool sets in order to accomplish its patent infringement.

45. Certain of the Doe Defendants have also actively induced the infringement of the '665 and '666 patents by aiding in creating the infringing tool sets and directing Fresh Express in how to use the tool sets and machinery to achieve the desired infringement.

46. Five Star has given Proseal notice of the infringement through a demand letter, a copy of which is attached hereto as Exhibit 7, and through this complaint.

47. Five Star and Direct Pack have been, and continue to be, damaged by such infringement of the '665 and '666 patents.

## FIFTH CAUSE OF ACTION

### (Trade Dress Infringement)

### (Against Defendants Fresh Express and DOES 7-10)

48. Plaintiff Five Star realleges and incorporates by reference the allegations set forth in paragraphs 1-47 above, as if set forth verbatim herein.

49. Five Star sells a line of high quality pre-packaged fresh salad products ("Five Star Products"). Examples of such products and their packaging is shown in Exhibit 8 hereto.

50. In connection with its Five Star Products line, Plaintiff Five Star has developed a trade dress which is essential to its business and to customers' identification of Five Star as the source of the products.

51. Five Star has made a substantial investment in the development of the consistent appearance of its popular "Simply Fresh Salads®" Products and product packaging to create what has become distinctive indicia of Five Star as the source of the Five Star Products.

52. The distinctive Five Star Products, and their packaging design constitute protectable trade dress. On information and belief, this trade dress in not only inherently distinctive, but has also established secondary meaning in the marketplace such that customers have come to associate it with Five Star.

53. The distinctive non-functional appearance of Five Star's protectable and trade dress includes at least the following elements:

   a. A rounded square transparent plastic bowl containing salad ingredients, particularly lettuce or other greens;

       b.    A companion transparent plastic insert containing a central receptacle to hold the salad dressing cup and several arcuate, segmental receptacles, positioned circumferentially around the central receptacle, each of the receptacles containing various colorful salad toppings;

       c.    An elongated generally rectangular plastic band overwrap or sleeve the overwrap or sleeve being tensioned around the bowl, with said plastic band or sleeve overwrap containing a particular look and feel through its use of font, colors and overall design that provides a vertical billboard as well as allowing for all the salad toppings to be viewed without being obstructed by the band or sleeve

54.    On information and belief, Fresh Express has offered for sale and sold pre-packaged products, as exemplified in Exhibit 9 hereto that infringe on Five Star's trade dress.

55.    Five Star's and Fresh Express's pre-packaged salad products would appeal to, and are directed to, the same class of consumers, and are displayed at the retail level in close proximity to each other.

56.    Fresh Express's infringing products are a basic duplication of the existing successful Five Star salad line, have caused, and are likely to continue causing, consumer confusion or mistake by falsely suggesting that Fresh Express's infringing products are connected with, sponsored by, affiliated with, approved by, or related to Five Star.

57.    Fresh Express's sale of infringing products constitutes trade dress infringement in violation of 15 U.S.C. §1125(a).

58.    Fresh Express's infringing activities have caused, and unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Five Star's business reputation and to the goodwill associated with Plaintiff Five Star's trade dress, including but not limited to, diversion of customers, lost sales and lost profits. Plaintiff Five Star has no adequate remedy at law.

## SIXTH CAUSE OF ACTION

**(Active inducement of trade dress infringement)**

**(Against Defendants Proseal and DOES 7-10)**

59. Plaintiff Five Star realleges and incorporates by reference the allegations set forth in paragraphs 1-58 above, as if set forth verbatim herein.

60. Defendant Proseal was aware of Five Star's use in commerce of its distinctive trade dress packaging. Proseal nevertheless supplied Defendant Fresh Express with machinery, including a manufacturing tool set, that is based on the tool that Proseal created for Five Star and which is intentionally designed to allow Fresh Express to re-create almost exactly Five Star's distinctive, trade-dress packaging.

61. Proseal provided this machinery with the express intention of aiding Fresh Express in its trade dress infringement. Fresh Express has used Proseal's machinery in order to accomplish its trade dress infringement.

62. Certain of the Doe Defendants have also actively induced the infringement by aiding in creating the infringing tool set and directing Fresh Express in how to use the tool set to achieve the desired infringement.

63. Five Star has given Proseal notice of the trade dress infringement through a demand letter, a copy of which is attached hereto as Exhibit 7, and through this complaint.

64. Five Star and Direct Pack have been, and continue to be, damaged by said trade dress infringement.

## SEVENTH CAUSE OF ACTION

**(Common Law Unfair Competition)**

**(Against Defendants Fresh Express, Proseal, and DOES 7-10)**

65. Plaintiff Five Star realleges and incorporates by reference the allegations set forth in paragraphs 1-64 above, as if set forth verbatim herein.

66. Fresh Express and Proseal were aware of the Five Star products and Five Star's prior use of the Five Star trade dress and adopted and used its infringing packaging layout in disregard of Plaintiff Five Star's prior use, rights and reputation.

67. Fresh Express and Proseal had access to the Five Star products packaging design that it misappropriated from Five Star.

68. Fresh Express and Proseal's infringing use of Five Star's packaging design has resulted in the misappropriation of, and trading upon, Five Star's goodwill and business reputation at the expense of Plaintiff Five Star, and without any expense to Fresh Express. The effect of Fresh Express's misappropriation of the goodwill symbolized by the Plaintiff Five Star's packaging design is to unjustly enrich Fresh Express, damage Plaintiff Five Star, and confuse and/or deceive the public.

69. Fresh Express and Proseal's conduct constituted, and continues to constitute, unfair competition with Plaintiff Five Star, and has caused, and will continue to cause, irreparable injury to Five Star's goodwill and reputation unless enjoined by this Court. Five Star has no adequate remedy at law.

## EIGHTH CAUSE OF ACTION

**(Statutory Unfair Competition – Cal. Bus. & Prof. Code § 17200)**

**(Against All Defendants)**

70. Five Star realleges and incorporates by reference the allegations set forth in paragraphs 1-69 above, as if set forth verbatim herein.

71. Fresh Express's use of a copy, variation, simulation or colorable imitation of Plaintiff Five Star's package design in connection with its sale of competing prepackaged salad products constitutes a deceptive trade practice by creating a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Fresh Express's goods and/or services, or by creating a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, Five Star.

72. Fresh Express's use of a tool set that is virtually indistinguishable from Five Star's manufacturing tool set to make its packaging is also a deceptive trade practice that constitutes a deceptive trade practice by creating a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Fresh Express's goods and/or services, or by creating a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, Five Star.

73. Fresh Express's acts are in violation of California's Unfair Competition Law. Cal. Bus. & Prof. Code § 17200.

74. Proseal, the individual defendants, and the DOE defendants have taken and continue to take steps to aid Fresh Express in its violation of Section 17200.

75. As a consequence of the foregoing, Fresh Express has been unjustly enriched, Five Star has suffered and will continue to suffer irreparable harm and loss, and Five Star has no adequate remedy at law.

## NINTH CAUSE OF ACTION

**(Breach of contract)**

**(Against Defendants Proseal, Olivo, Diveley, Pereira, and Fresh Express)**

76. Five Star realleges and incorporates by reference the allegations set forth in paragraphs 1-75 above, as if set forth verbatim herein.

77. Defendants Proseal, Olivo, Diveley, and Pereira all have entered into non-disclosure agreements with Five Star related to Five Star's confidential information. Proseal's NDA is attached hereto as Exhibit 1. Olivo's NDA is attached hereto as Exhibit 10. Diveley's NDA is attached hereto as Exhibit 11. Pereira's NDA is attached hereto as Exhibit 12. Olivo, Diveley, and Pereira entered into those NDA's as part of their job duties for Fresh Express.

78. All of these defendants have breached their NDA's by providing Five Star's confidential information to Fresh Express for its use in competition against Five Star and by not destroying or returning to Five Star its confidential information

as required pursuant to the NDA's. Olivo, Diveley, and Pereira breached their NDA's as part of their job duties for Fresh Express and for the benefit of Fresh Express.

79. Therefore, Fresh Express should be deemed to be a signatory to the NDA's of Olivo, Diveley, and Pereira.

80. Five Star has performed all of its obligations under the various NDA's or has been excused from performing as a result of defendants' material breaches of those agreements.

81. Five Star has been damaged by defendants' breaches in an amount to be proven at trial.

## TENTH CAUSE OF ACTION

**(Intentional interference with contract)**

**(Against Defendant Fresh Express)**

82. Five Star realleges and incorporates by reference the allegations set forth in paragraphs 1-81 above, as if set forth verbatim herein.

83. Defendant Fresh Express was aware of the NDA's set forth above with Defendants Proseal, Olivo, Diveley, and Pereira.

84. Defendant Fresh Express intentionally took steps to convince Proseal, Olivo, Diveley, and Pereira to breach their NDA's with Five Star.

85. To the extent that the Olivo, Diveley, and Pereira NDA's are not deemed to be contracts entered into by Fresh Express, then Fresh Express has interfered with those agreements in its conduct. Fresh Express has also interfered with Proseal's contract with Five Star.

86. Five Star has been damaged by Fresh Express's intentional interference with the NDA's between Five Star and Proseal, Olivo, Diveley, and Pereira. Five Star seeks damages in an amount to be proven at trial.

87. Because Fresh Express's conduct was willful, oppressive, and malicious, Five Star also seeks punitive damages in an amount necessary to punish

Fresh Express and deter Fresh Express and others from engaging in such misconduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Five Star and Direct Pack respectfully request relief and pray for judgment as follows:

1. Temporarily, preliminarily, and permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, from infringing the '665 and '666 Patents and Five Star's trade dress;

2. Temporarily, preliminarily, and permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, from any further possession or use of Five Star's trade secrets;

3. Awarding Plaintiffs Five Star and Direct Pack their actual damages in an amount to be proved at trial and/or as otherwise provided by law;

4. Awarding Plaintiffs Five Star and Direct Pack the total profit realized by Defendants as a result of the infringement of the '665 and '666 Patents, the use of Five Star's trade dress, and the possession and use of Five Star's trade secrets;

5. Awarding Plaintiffs Punitive Damages, in an amount determined by the finder of fact;

6. Awarding Plaintiffs their attorneys' fees;

7. Awarding Plaintiffs prejudgment interest;

/ / /

/ / /

/ / /

/ / /

8. Awarding Plaintiffs the costs of suit incurred herein; and

9. Awarding such other and further relief as is just and proper.

Dated: September 5, 2019          **ONE LLP**

By: /s/ Christopher W. Arledge
    Christopher W. Arledge
    Nathaniel L. Dilger
    Jenny S. Kim

    -and-

**LARSON O'BRIEN LLP**

    Stephen G. Larson
    Dana M. Howard

    Attorneys for Plaintiffs,
    FIVE STAR GOURMET FOODS, INC.
    and DIRECT PACK, INC.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues so triable under the law.

Dated: September 5, 2019  **ONE LLP**

By: /s/ Christopher W. Arledge
Christopher W. Arledge
Nathaniel L. Dilger
Jenny S. Kim

-and-

**LARSON O'BRIEN LLP**

Stephen G. Larson
Dana M. Howard

Attorneys for Plaintiffs,
FIVE STAR GOURMET FOODS, INC.
and DIRECT PACK, INC.