UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FIVE STAR GOURMET FOODS, INC., et al.,

Plaintiffs,

v.

FRESH EXPRESS, INC., et al.,

Defendants.

Case No. 19-cv-05611-PJH

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 33

Defendant Plastic Ingenuity, Inc.'s ("Plastic Ingenuity") motion to dismiss came on for hearing before this court on February 19, 2020. Plaintiffs Five Star Gourmet Foods, Inc. ("Five Star") and Direct Pack, Inc. ("Direct Pack") appeared through their counsel, Chris Arledge. Defendant appeared through its counsel, Thomas Brown. Having read the papers filed by the parties and carefully considered their arguments and relevant authority, and good cause appearing, the court hereby GRANTS defendant's motion for the following reasons.

**BACKGROUND**

On September 5, 2019, plaintiffs Five Star and Direct Pack filed the original complaint in this action against defendants Fresh Express, Inc. ("Fresh Express"), Proseal America, Inc. ("Proseal"), Plastic Ingenuity, John Olivo, Kenneth Dively, Fabian Pereira, and Doe defendants. Dkt. 1. On October 31, 2019, plaintiffs filed a First Amended Complaint ("FAC"). Dkt. 13. The FAC asserts ten causes of action: (1) fraud and deceit; (2) misappropriation of trade secrets; (3) design patent infringement; (4) active inducement of patent infringement; (5) trade dress infringement; (6) active

1 inducement of trade dress infringement; (7) common law unfair competition; (8) statutory
2 unfair competition; (9) breach of contract; and (10) intentional interference with contract.
3 Plaintiffs assert the Third, Fifth, and Sixth through Eighth causes of action against Plastic
4 Ingenuity.

On December 19, 2019, defendant Plastic Ingenuity filed the present motion to dismiss based on Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). The motion seeks to dismiss all claims asserted against Plastic Ingenuity on personal jurisdiction and venue grounds. Prior to the hearing on this motion, the court issued an order granting in part and denying in part defendant Fresh Express' motion to dismiss. Dkt. 59. In response to that order plaintiffs filed a Second Amended Complaint (Dkt. 67, the "SAC"), and the parties have stipulated that the pending motion to dismiss should apply to the SAC. Dkt. 71. For purposes of this motion, the SAC is substantially similar to the FAC and alleges the same causes of action.

Plaintiff Five Star is a California corporation that sells pre-packaged salads in plastic containers. Those plastic containers are configured with various compartments such that the salad's ingredients are kept separate in the packaging. SAC ¶¶ 17, 23. Plaintiff Direct Pack is a co-owner, with Five Star, of U.S. Design Patent Nos. 698,665 and 698,666. Id. ¶ 40. Defendant Fresh Express also sells pre-packaged snacks and salads and also uses plastic packaging that divides salad ingredients into segregated compartments while packaged. Plaintiffs allege that Fresh Express infringed on their design patents and trade dress. Id. ¶¶ 39–44, 51–61. Defendant Plastic Ingenuity is a packaging company that manufactures the allegedly infringing packaging used by Fresh Express. Id. ¶ 25.

Plaintiffs' claims against Plastic Ingenuity derive to a great extent from allegations concerning Five Star and Fresh Express. The court's January 31, 2020 order contains a more thorough recitation of the facts between those parties. Dkt. 59. In 2016, a Fresh Express executive met a Five Star executive at a trade show and, through later communications, Fresh Express stated an interest in exploring how the two companies

could "develop a fruitful partnership together." SAC ¶ 16. Five Star agreed to permit Fresh Express executives to tour Five Star's Florida facility in May 2017. Id. ¶ 18. Five Star showed them its production process, how it staffs its production lines, the equipment and equipment vendors it uses, and provided a comprehensive view of Five Star's entire salad bowl production process, including how it set up its assembly lines and the order of operations. Id.

Plaintiffs allege that Fresh Express has since used Five Star's confidential business information and publicly available information to copy every aspect of Five Star's patented salad bowl product, including the packaging and labeling design. Plastic Ingenuity controls every aspect of the manufacturing process for the allegedly infringing packaging that is then provided to Fresh Express for resale. Id. ¶¶ 25, 41. Plaintiffs further allege that Plastic Ingenuity was aware that Fresh Express' products infringed on Five Star's trade dress, but nonetheless provided packaging to Fresh Express. Id. ¶¶ 63, 65.

Plastic Ingenuity is a Wisconsin corporation with its primary place of business in Wisconsin. Declaration of Daniel Kuehn, Dkt. 34 (the "Kuehn Decl."), ¶ 2. The company has no employees, offices, facilities, or any other operations or physical presence in California. Id. ¶ 3. Plastic Ingenuity manufactured the parts and prototypes of its plastic salad container in Wisconsin and shipped its finished plastic salad containers to Georgia. Id. ¶ 4. At some point, Plastic Ingenuity shipped prototype salad containers to Fresh Express for testing at Fresh Express's facility in California. Id. ¶ 6. Plastic Ingenuity's employees also travel to California for sales pitches, technical support to customers and to attend industry conventions. Id. ¶ 7. The company states that it has never marketed the accused salad container in California and none of the company's sales in the state of California (approximately $12 million out of $165 million total sales in 2018) were derived from the accused product. Id. ¶¶ 5, 8–9.

/ / /

/ / /

**DISCUSSION**

**A.     Legal Standard**

The party seeking to invoke a federal court's jurisdiction bears the burden of demonstrating jurisdiction. Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). A federal court may dismiss an action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts uncontroverted facts in the complaint as true and resolves conflicts in affidavits in the plaintiffs' favor. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014); see Fed. R. Civ. Proc. 4(k)(1)(a). California's long arm statute permits exercise of personal jurisdiction to the fullest extent permissible under the U.S. Constitution, therefore, the court's inquiry "centers on whether exercising jurisdiction comports with due process." Picot, 780 F.3d at 1211; see Cal. Code Civ. Proc. § 410.10.

The Due Process Clause of the Fourteenth Amendment "limits the power of a state's courts to exercise jurisdiction over defendants who do not consent to jurisdiction." Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014). Due process requires that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted) (citations omitted). Under the "minimum contacts" analysis, a court can exercise either "general or all-purpose jurisdiction," or "specific or conduct-linked jurisdiction." Daimler, 571 U.S. at 121–22 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

Under general jurisdiction, a nonresident defendant may be subject to suit even on matters unrelated to his contacts with the forum. Id. at 126–33. To establish general jurisdiction, plaintiffs must demonstrate that the defendant has continuous and systematic contacts sufficient to approximate physical presence in the state. In re W. States

4

Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013). Where the defendant is a foreign corporation, the plaintiffs must establish that the defendant has "affiliations so continuous and systematic as to render [it] essentially at home in the forum State, . . . i.e., comparable to a domestic enterprise in that State." Daimler, 571 U.S. at 133 n.11 (citation omitted). The paradigm fora for the exercise of general jurisdiction over a corporation are the place of incorporation and the principal place of business, and only in an "exceptional case" will general jurisdiction be available elsewhere. Id. at 137–38 & n.19.

In the absence of general jurisdiction, a court may exercise specific jurisdiction over a defendant if its less-substantial contacts with the forum give rise to the claim or claims pending before the court—that is, if the cause of action "arises out of" or has a substantial connection with that activity. Hanson v. Denckla, 357 U.S. 235, 250–53 (1958); see also Goodyear, 564 U.S. at 924–25. The inquiry into whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. Walden v. Fiore, 571 U.S. 277, 283–84 (2014) (citation omitted).

To determine whether a defendant's contacts with the forum state are sufficient to establish specific jurisdiction, both the Ninth and Federal Circuits[1] employ a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or

---

[1] Federal Circuit precedent controls the personal jurisdiction analysis for plaintiffs' design patent infringement claim. See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1335, 1346 (Fed. Cir. 2012). Further, when a suit involves both patent and non-patent claims, Federal Circuit law applies to the non-patent claims if "'the resolution of the patent infringement issue will be a significant factor' in determining liability under the non-patent claims." Id. (quoting 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998)). The patent related claims in this case are not "intimately linked" to patent law because plaintiffs' other claims do not involve patent-related rights. Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003) (citation omitted). Therefore, the court applies Ninth Circuit law to the personal jurisdiction analysis of plaintiffs' non-patent claims.

5

| | |
|---|---|
| 1 | resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; |
| 2 | |
| 3 | (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and |
| 4 | (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. |

Morrill v. Scott Financial Corp., 873 F.3d 1136, 1142 (9th Cir. 2017); accord Xilinx, Inc. v. Papst Licensing Gmbh & Co. KG, 848 F.3d 1346, 1353 (Fed. Cir. 2017). Plaintiffs bear the burden of satisfying the first two prongs. Morrill, 873 F.3d at 1142. If plaintiffs do so, then the burden shifts to defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477–78 (1985)).

**B.  Analysis**

**1.  General Jurisdiction**

Plaintiffs contend that defendant is subject to general jurisdiction in California. Opp. at 4. A corporation will primarily be "at home" for the purposes of general jurisdiction in two paradigmatic forums: its place of incorporation and its principal place of business. Daimler, 571 U.S. at 137. Barring a showing of those two paradigmatic forums, general jurisdiction is only appropriate in an "exceptional case" where the defendant's affiliations with the forum are "so substantial and of such nature as to render the corporation at home." Id. at 138 n.19.

Here, defendant Plastic Ingenuity is a Wisconsin corporation with its primary place of business in Wisconsin. Kuehn Decl. ¶ 2. Thus, Plastic Ingenuity is at home in Wisconsin. Lacking the two paradigmatic forums, plaintiffs must demonstrate that defendant's contacts in California are so substantial that those contacts render defendant at home in California, i.e., that this is an "exceptional case" such that the court would find general jurisdiction beyond the two paradigmatic forums. Plaintiffs point to the following facts to demonstrate such an exceptional case: defendant regularly sends its employees to California and the company generates significant revenue from its sales in California.

6

Id. ¶ 7.

These contacts are insufficient to establish general jurisdiction. Daimler teaches that "the general jurisdiction inquiry examines a corporation's activities worldwide—not just the extent of its contacts in the forum state—to determine where it can rightly be considered at home." Ranza v. Nike, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015) (citing Daimler, 571 U.S. at 139 n.20). Two cases illustrate the contours of this requirement. In Ranza, the Ninth Circuit held that general jurisdiction did not lie where the defendant sent employees on an average of 47 trips per month to the forum state. Id. at 1069. In addition to business trips, the defendant also had between twenty and thirty employees working in the forum state, but those contacts were minimal limited compared to its worldwide contacts. See id. at 1069–70. In Martinez v. Aero Caribbean, 764 F.3d 1062, 1070 (9th Cir. 2014), the defendant, a French entity, did not have office, staff, or other physical presence in California and was not licensed to do business in California. The court found that the defendant's California contacts—contracts worth between $225 and $450 million to sell airplanes to a California corporation; contracts with eleven California component suppliers; sending representatives to California to attend industry conferences, promote products, use of defendant's aircraft by third-parties in California; and advertising in California—to be minor compared to its other worldwide contacts. Id.

These facts here are similar to Ranza and Martinez, where some business activity occurred in the forum state, but not a sufficient amount to render the corporation at home there. The Kuehn Declaration states that defendant does not have any employees, offices, or any other operations or physical presence in California. Kuehn Decl. ¶ 3. The majority of defendant's revenue did not occur in California. Id. ¶ 8 (stating $12 million in sales in California out of $165 million in total sales in 2018). While plaintiffs point to some employee travel to California, they do not draw a comparison against defendant's worldwide activities, including its other business travel. These facts are indicative of defendant "doing business" in California rather than being "at home" in California. Daimler, 571 U.S. at 138–39, n.20 ("A corporation that operates in many places can

scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." (citation omitted)).

Thus, plaintiffs have not demonstrated general jurisdiction over Plastic Ingenuity.

**2. Specific Jurisdiction**

As stated previously, the court applies a three-part test to determine whether specific jurisdiction is appropriate in California:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Morrill, 873 F.3d at 1142; accord Breckenridge Pharm., 444 F.3d at 1363. Plaintiffs have the burden to meet the first two prongs. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2012).

The first prong of the three-part test involves two possible analytical avenues: "[f]or claims sounding in contract, a purposeful availment test is used; for claims sounding in tort a purposeful direction test is used." In re Boon Glob. Ltd., 923 F.3d 643, 651 (9th Cir. 2019) (citing Picot, 780 F.3d at 1212). Plaintiffs' trademark claims generally sound in tort (Nissan Motor Co. v. Nissan Computer Corp., 246 F.3d 675, 675 (9th Cir. 2000) (unpublished opinion)), and the Federal Circuit generally applies purposeful direction analysis to patent claims. See, e.g., Fujitsu Ltd. v. Belkin Int'l, Inc., 782 F. Supp. 2d 868, 883 (N.D. Cal. 2011) (applying purposeful direction to direct and indirect patent infringement claims). Purposeful direction is often evaluated using the Calder "effects" test. See Calder v. Jones, 465 U.S. 783 (1984). Plaintiffs proceed under a straightforward application of the Calder effects test, but first advance a "stream of commerce" theory, as an alternate method of establishing specific jurisdiction.

8

### i. Stream of Commerce

Plaintiffs contend that a stream of commerce theory is appropriate to find specific jurisdiction. Opp. at 5. Stream of commerce does not lend itself to a clear statement of law because the leading Supreme Court opinions, Asahi Metal Industry Co. v. Superior Court of California, Solano County, 480 U.S. 102 (1987), and J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873 (2011), were plurality opinions and resulted in competing standards. In Asahi, Justices O'Conner and Brennan issued opinions, each garnering the support of four Justices. The opinions differed over whether a plaintiff must demonstrate something more than a defendant's awareness that the stream of commerce may result in the product being marketed in the forum state. Asahi, 480 U.S. at 112 (plurality opinion) (The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. . . ." (citations omitted)); id. at 117 (Brennan, J., concurring in part and concurring in the judgment) ("As long as a participant in [the stream-of-commerce] process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise . . . ."). Both opinions predicated their different analyses on the same end result: the product in question would end up in the forum state. Decades later, J. McIntyre Machinery, also resulted in a plurality opinion and no clear holding. Yet, the predicate requirement of the product reaching the forum state remained. J. McIntyre Machinery, 564 U.S. at 881–82 (plurality opinion) ("[A] defendant's placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers in the forum State' may indicate purposeful availment." (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980))).

Plaintiffs' stream of commerce theory does not satisfy McIntyre or Asahi. The critical element running throughout the various stream of commerce tests is that the defendant places goods in the stream of commerce "with the expectation that they will be purchased by consumers in the forum State." J. McIntyre Machinery, 564 U.S. at 881–82; see also Asahi, 480 U.S. at 117 ("As long as a participant in [the stream-of-

commerce] process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise . . . ."). Applying here, it is clear that defendant Plastic Ingenuity did not place its product into the stream of commerce <u>for purchase by California consumers</u>. It only sent prototypes to California so that Fresh Express could test the prototypes—they were not for consumer purchase. Notably, the finished product was shipped for resale to Georgia and defendant never marketed the accused salad container in California. Kuehn Decl. ¶¶ 4–5. Further, defendant states that "[n]one of Plastic Ingenuity's California sales were derived from the accused product at issue in this lawsuit." <u>Id.</u> ¶ 9. The facts demonstrate an isolated incident, sending prototypes to Fresh Express' facility, that did not seek to serve the California market.

Plaintiffs cite <u>Beverly Hills Fan Co. v. Royal Sovereign Corp.</u>, 21 F.3d 1558, 1565 (Fed. Cir. 1994), as an exemplary case where a court found specific jurisdiction based on inserting a single product into the stream of commerce. That case does not counsel a different result. In <u>Beverly Hills Fan</u>, the defendants shipped a fan, only once, to the forum state through an established distribution channel. <u>Id.</u> The Federal Circuit found such an intentional act sufficient under either Justice O'Connor's or Justice Brennan's stream of commerce analysis because the defendants placed the fan into commerce, knew the likely destination of the fan, and their conduct was such that they should reasonably have anticipated being brought to court there. <u>Id.</u> at 1566. Yet, the predicate fact in <u>Beverly Hills</u> was that the defendants knew or could have foreseen the product would end up in the forum state. <u>Id.</u> at 1564 ("[I]t can be presumed that the distribution channel formed by defendants and [their intermediary] was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was Virginia."). Here, defendant has submitted facts, unchallenged by plaintiffs, that demonstrate that the product in question was not marketed to California consumers and not intended for sale in California. Defendant did not have any sales in California relating to the product and thus no expectation of being haled into court in California.

10

Thus, a stream of commerce theory does not apply.

### ii. Purposeful Direction

Plaintiffs also argue the Calder effects test demonstrates purposeful direction. Under the Calder effects test, plaintiffs must show that the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. 465 U.S. at 789–90.

For the first element, plaintiffs have identified an intentional act—sending prototype salad containers to Fresh Express's facility in California for testing—which defendant does not contest. Accordingly, plaintiffs meet the first element of the Calder test.

The second element "asks whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" Picot, 780 F.3d at 1214 (quoting Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010), abrogated on other grounds by Walden, 571 U.S. 277). In Walden v. Fiore, the Supreme Court rejected an interpretation of Calder predicated on the defendants' "knowledge of [the plaintiffs'] 'strong forum connections,'" combined with the plaintiffs' "foreseeable harm" suffered in the forum State. 571 U.S. at 289 (citation omitted). Instead, a court "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1070 (9th Cir. 2017) (quoting Walden, 571 U.S. at 289). "Calder made clear that mere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden, 571 U.S. at 290.

This question is especially relevant for intellectual property cases, such as plaintiffs' design patent and trade dress claims. Prior to Walden, courts in this circuit had found that specific jurisdiction exists where "a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual

property rights knowing [the plaintiff] was located in the forum state." Adobe Sys. Inc. v. Blue Source Grp., Inc., 125 F. Supp. 3d 945, 961 (N.D. Cal. 2015) (alteration in original) (quoting Amini Innovation Corp. v. JS Imports, Inc., 497 F. Supp. 2d 1093, 1105 (C.D. Cal. 2007)). In Axiom Foods, the Ninth Circuit explicitly recognized that Walden clarified that express aiming requires something more than knowledge of plaintiffs' connection to the forum state and foreseeable harm to plaintiffs, which earlier Ninth Circuit opinions characterized as "individualized targeting." 874 F.3d at 1069 (citing Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 678–79 (9th Cir. 2012); and Brayton Purcell, 606 F.3d at 1130). The Axiom Foods court held that "while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what Walden requires." Id. at 1070. District courts have recognized that plaintiffs can no longer show express aiming simply by alleging the defendant knew of the plaintiff's forum connections and could reasonably foresee the harm in that forum. Cisco Sys. Inc. v. Link US, LLC, No. 18-CV-07576-CRB, 2019 WL 6682838, at *4 (N.D. Cal. Dec. 6, 2019); Graco Minn. Inc. v. PF Brands, Inc., No. 18-CV-1690-WQH-AGS, 2019 WL 1746580, at *4 (S.D. Cal. Apr. 17, 2019); Anaya v. Machines de Triage et Broyage, No. 18-CV-01731-DMR, 2019 WL 1083783, at *4 (N.D. Cal. Mar. 7, 2019).

Axiom Foods' holding is applicable here. According to plaintiffs, defendant knew that, once the prototypes were finalized, Fresh Express would then sell imitation products in California. Opp. at 7. Plaintiffs argue that California is the focal point of their harm because Five Star's business is centered in California and thus the brunt of the harm Five Star suffers from the imitation product is in California. Id. at 7–8. This is precisely the sort of plaintiff-centered harm that Walden and Axiom Foods foreclosed. The appropriate inquiry is into the defendant's relationship to California. In Axiom Foods, the Ninth Circuit determined that distribution of an email newsletter that allegedly violated trademarks to ten California recipients out of 343 total recipients did not meet the express aiming requirement. 874 F.3d at 1070. The court found it persuasive that the defendant "sent

one newsletter to a maximum of ten recipients located in California, in a market where [the defendant] has no sales or clients." Id. at 1071. Here, defendant did not have any sales of the infringing product in California and the prototypes sent to California have a remote connection to the ultimate harm.

Finally, under the third element of the Calder test, the court must examine whether the intentional act caused harm that defendant knew was likely to be suffered in California. Plaintiffs have not demonstrated that defendant knew any harm would likely be suffered in California. First, defendants have submitted an uncontroverted declaration that Plastic Ingenuity did not market the product in question in California and did not derive any sales in California from the accused product. Kuehn Decl. ¶¶ 5, 9. This demonstrates that defendant did not know of any sales in California, much less any potential harm caused by sale of its product.

Second, plaintiffs have not sufficiently alleged that Plastic Ingenuity actually knew Five Star, Direct Pack, or their products when defendant shipped the prototypes to Fresh Express' facility. The SAC alleges that Plastic Ingenuity first received notice of possible infringement through this litigation. The third cause of action for design patent infringement alleges that "Five Star has given notice to Plastic Ingenuity [of the infringement] through this complaint." SAC ¶ 43. The fifth cause of action for trade dress infringement contains no allegation that Plastic Ingenuity knew of the infringement prior to this case. See id. ¶¶ 51–61. The sixth cause of action for active inducement of trade dress infringement contains a conclusory allegation that "Defendants Proseal and Plastic Ingenuity were aware of Five Star's use in commerce of its distinctive trade dress packaging." Id. ¶ 63. The SAC indicates that defendant did not know at the time of the intentional act (shipping prototypes) that a harm was likely to be suffered in California. When combined with the inadequate express aiming theory, plaintiffs have not carried their burden to establish purposeful direction using the Calder effects test.

### iii. Arises Out Of or Relates To

Considering the second prong of the specific jurisdiction test confirms that specific

13

jurisdiction is not appropriate.  Plaintiffs contend that, but for defendant's sending prototypes to California in cooperation with Fresh Express's efforts to make a replica of Five Star's salad container, their claims would not have arisen.  Opp. at 8.  Defendant states that plaintiffs' claims are based on activities that occur outside California: manufacturing the salad container and selling it to Fresh Express.  Reply at 4.

The second prong of the specific jurisdiction analysis requires the court to determine whether plaintiffs' claims "arise[] out of or relate to" a defendant's forum related conduct.  Burger King, 471 U.S. at 473 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).  The Ninth Circuit has characterized the second specific jurisdiction prong as a "but for" test.  In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d at 742 (citing Shute v. Carnival Cruise Lines, 897 F.2d 377, 385 (9th Cir.1990), rev'd on other grounds, Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991)).  The Federal Circuit appears to take a more flexible approach than a "but for" test, having held that the words "relate to" permit a more relaxed standard than the arise out of standard.  See Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1362 (Fed. Cir. 2001) (citing Akro Corp. v. Luker, 45 F.3d 1541, 1547 (Fed. Cir. 1995)).

Plaintiffs' direct and indirect trade dress and design patent infringement claims arise out of Fresh Express' alleged infringing product.  See, e.g., SAC ¶ 57 ("Plastic Ingenuity has manufactured and sold to Fresh Express . . . pre-packaged products . . . that infringe on Five Star's trade dress."); ¶ 65 ("Plastic Ingenuity has provided the infringing packaging to Fresh Express with the express intention of aiding Fresh Express in its use of the infringing packaging in commerce.").  That product is manufactured in Wisconsin and then shipped for resale to Georgia.  Kuehn Decl. ¶ 4.  Plaintiffs' claims do not arise out of defendant's California activities.

Even if the court were to take a more flexible view (as indicated by the Federal Circuit for the design patent claim) of the causal connection between the prototypes and the final infringing product, plaintiffs' argument suffers from a further defect.  Fresh Express, rather than defendant, made the ultimate decision as to where the allegedly

infringing product was to be sold. As the SAC alleges, "Plastic Ingenuity has manufactured and sold to Fresh Express, and <u>Fresh Express has sold and offered for sale to retailers and the general public</u>, packaging to which the patented design, or a colorable imitation thereof, has been applied, and has thereby infringed the '665 and '666 patents. SAC ¶ 41 (emphasis added); see also id. ¶ 57 ("Plastic Ingenuity has manufactured and sold to Fresh Express, <u>Fresh Express has offered for sale and sold</u>, pre-packaged products, as exemplified in Exhibit 5 hereto that infringe on Five Star's trade dress." (emphasis added)). Any causal impact of the prototypes on the final product is further disassociated from plaintiffs' claims due to Fresh Express' resale of the product to the general public.

Accordingly, plaintiffs have not demonstrated how their claims arise out of or relate to defendant's lone contact with the forum. The court finds that plaintiffs have not satisfied the first two prongs of the specific jurisdiction analysis and, therefore, the court need not consider the third prong or the Rule 12(b)(3) motion for improper venue.

**CONCLUSION**

For the foregoing reasons, the court finds that it lacks personal jurisdiction over Plastic Ingenuity. Accordingly, the court GRANTS defendant's motion to dismiss and plaintiff's claims against defendant Plastic Ingenuity, Inc. are DISMISSED WITHOUT PREJUDICE. See Grigsby v. CMI Corp., 765 F.2d 1369, 1372 n.5 (9th Cir. 1985) (holding that district courts without personal jurisdiction should dismiss claims without prejudice). Plaintiff may refile in another jurisdiction that may properly exercise personal jurisdiction over Plastic Ingenuity.

**IT IS SO ORDERED.**

Dated: March 16, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge